IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KUTRELL BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-CV-764-TCK-FHM |
| | ) | |
| COXCOM, LLC d/b/a | ) | |
| Cox Communications, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Defendant CoxCom, LLC ("Defendant")'s Motion for Summary

Judgment and Brief in Support ("Motion for Summary Judgment") (Doc. 32).  For reasons

discussed below, Defendant's Motion for Summary Judgment is GRANTED.

## I.    Factual Background [1]

### A.    Plaintiff's Employment at Cox

Defendant hired Plaintiff Kutrell Barnes ("Plaintiff") on September 15, 2014, as a

Communications Center Specialist I, in Tulsa, Oklahoma.  Plaintiff was an at-will employee.  (Def.

Ex. 1.)  Throughout his employment with Defendant, Plaintiff worked Tuesday to Saturday and

reported to Christi Gladden ("Gladden").  On occasions when Gladden was not available, Plaintiff

also reported to other supervisors, including Sheryl Lay ("Lay").  (Pl. Ex. 4, 118:13-120:1.)

At all relevant times, Defendant's Attendance Policy ("Attendance Policy") assigned

employees "occurrences" for failing to work an entire shift, for arriving to work late or leaving

early.  An employee was assigned half an occurrence for a late arrival or early departure, and one

---

[1]  The following facts are undisputed, or as set forth in Plaintiff's Response in Opposition
to Defendant's Motion for Summary Judgment ("Response Brief") (Doc. 38), or in documentary
evidence.

full occurrence for an unscheduled absence.  (Def. Ex. 6, 8.)  Scheduled and approved absences, including leave taken under the Family Medical Leave Act ("FMLA"), were excluded from this policy.  Presenting a doctor's note for an unscheduled absence allowed a two-day absence to count as one occurrence.  This policy was available for employees to review on Defendant's "MyAxis" system.

The Attendance Policy changed shortly after Plaintiff began his employment with Defendant, increasing the number of occurrences necessary for each level of discipline by one. Effective January 1, 2015, employees were disciplined for unscheduled tardies and absences as follows: a Documented Verbal Warning after six occurrences, a Written Warning after seven occurrences, and a Final Written Warning after eight occurrences.  An employee was terminated when he or she accrued nine occurrences in a twelve-month period.  During the transition between the 2014 version and the more lenient 2015 version, an employee who had been issued a warning under the 2014 Attendance Policy was reissued that same warning on his or her next occurrence. Additionally, under the 2015 policy all occurrences remained on an employee's record for twelve months after they occurred.

Plaintiff had attendance problems throughout his employment with Defendant.  On November 15, 2014, pursuant to the 2014 version of the Attendance Policy, Gladden issued Plaintiff a Documented Verbal Warning in response to five and a half occurrences.  (Def. Ex. 5.) After another unscheduled absence on December 14, 2014, Gladden issued Plaintiff a Written Warning.  Gladden also counseled Plaintiff about his attendance issues.  On his 2014 evaluation, Plaintiff received a "Meets Expectations" rating as well as an instruction from Gladden to "focus on his attendance."  (Def. Ex. 10.)  Later, on both February 3 and March 4, 2015, Gladden counseled Plaintiff about taking extended breaks, lunches, and personal time.  On March 19, 2015,

Gladden also provided Plaintiff with a coaching letter, encouraging him to make the adjustments necessary for an acceptable improvement level, and informing him that she would be monitoring his performance over the next ninety days. On the same date, she reissued Plaintiff a Written Warning for accumulating seven and a half occurrences, based on two unscheduled tardies on February 17 and March 7, 2015. (Def. Ex. 12.)

On Plaintiff's mid-year evaluation dated July 31, 2015, Gladden once again discussed his attendance, noting that she would like him "to fully focus on his attendance to ensure he successfully completes his corrective action plan." (Def. Ex. 14.) After Plaintiff's mid-year evaluation, one of Plaintiff's occurrences "dropped" under the Attendance Policy, as it fell outside the rolling twelve-month period. Another occurrence dropped on October 7, 2015, and another half occurrence dropped on October 14, 2015. During this time, Plaintiff also accrued occurrences for unscheduled absences on October 1, 2015, and October 15, 2015. Accordingly, Gladden issued Plaintiff another Written Warning on October 16, 2015, for having seven occurrences within a rolling twelve-month period. All Written Warnings, as well as the coaching letter, noted that continued attendance issues might result in termination. (Def. Ex. 5, 7, 11, 12, 13, and 15.)

### B.    Plaintiff's Initial FMLA Leave

On October 25, 2015, Plaintiff injured his Achilles' tendon playing basketball. On October 27, 2015, Plaintiff told Gladden that he would need surgery to repair his Achilles' tendon, and that he would need FMLA leave. (Def. Ex. 2, at 89:5-9.) Gladden gave Plaintiff the phone number to call Unum, Defendant's third-party administrator for FMLA and short-term disability ("STD"), to inquire about his eligibility. That same day, Plaintiff applied for FMLA and STD benefits with Unum.

Plaintiff was on continuous FMLA/STD leave from October 27 through December 17, 2015. During this time, he received six weeks of full pay and benefits while he underwent surgery to repair his Achilles' tendon and recovered. While Plaintiff was on leave, Gladden completed his annual evaluation for 2015. Plaintiff received a "Meets Expectations" rating on this evaluation, as well as a $1.01 per hour pay raise, effective upon his return to work. Gladden also instructed Plaintiff, "I encourage you to focus on your attendance; successfully completing your corrective action plan." (Def. Ex. 22.) On December 17, 2015, Plaintiff's doctor cleared him to return to work with no restrictions, although he was required to wear a medical boot and to remain seated. (Pl. Ex. 5.)

### C. Plaintiff's Return to Work and Subsequent Termination

Plaintiff was scheduled to return to work on December 19, 2015. He did not report to work that day and was assigned one occurrence. Plaintiff also had unscheduled absences from work on December 23 and 24, 2015. He was assigned an occurrence for each of those days.

On December 23, 2015, Plaintiff left a telephone message on Defendant's Employee Status Line at 10:00 a.m., stating that he had "[taken] some pain medication and overslept," but would "be at work shortly." (Def. Ex. 3.) He also spoke to supervisor Lay. Though the contents of this call are disputed, Plaintiff contends that he told Lay he had reinjured his Achilles' tendon getting out of bed, and that a member of his doctor's staff had told him to "resume my medicine that I was taking for—for a couple of days and stay off of it." (Pl. Ex. 4, at 120:4-11.) Plaintiff contends Lay informed him that he would not need to contact Unum to request his FMLA/STD benefits if he would only be absent for two days, but that if he would be absent for three or more days, then he would need to do so. (*Id.* at 121:7-12.) At approximately 5:38 p.m., Plaintiff left another message on the Employee Status Line indicating that he would not be at work, as he might have

ripped some scar tissue, and he had been told to return to "non-weight bearing" activity and continue taking Demerol. He also stated that his doctor was unavailable until January 5, 2016, but that he had spoken with a member of the doctor's staff. Plaintiff was also absent the following day, December 24, 2015.

After his absence on December 24, 2015, Plaintiff was tardy on December 26, 2015, stating that his apartment had been broken into overnight. He was assigned half an occurrence for this tardy. Plaintiff was also tardy for his scheduled shifts on January 1 and 6, 2016, and was assigned half an occurrence for each date. Defendant determined that, including the two occurrences on December 23 and 24, 2015, Plaintiff had nine and a half occurrences under the Attendance Policy.

Gladden asked Melissa Cruts ("Cruts"), Defendant's Human Resources Manager, whether Plaintiff was on FMLA "protected leave" status on those December 23, 24, and 26, 2015. (Pl. Resp. Br., Doc. 38, at 8.) After Cruts indicated that he was not, Gladden asked Plaintiff at least once before January 6, 2016 to provide a doctor's note.[2] Plaintiff never provided this note. Both Cruts and Gladden knew that Plaintiff had been on FMLA from October 27 through December 17, 2015. (Pl. Resp. Br., at 15-16).

Gladden conducted Plaintiff's annual review on January 6, 2016, in which she reviewed the annual evaluation that she had completed while he was on leave. She did not mention that Plaintiff's absences on December 23 and 24, 2015 counted as occurrences, and did not mention that, if Plaintiff produced a doctor's note pursuant to those two absences, they would only count as one occurrence, reducing his occurrence total to eight and a half, below the nine that trigger

---

[2] Defendant alleges "Gladden asked Plaintiff at least once before January 6, 2016, to provide her with a doctor's note or contact Unum." (Def. Br., at 11.) Plaintiff disputes this fact "only insofar that he believes Gladden asked him one time for a doctor's note." (Pl. Resp. Br., at 8.) Though it is unclear from Plaintiff's language if he disputes that Gladden told him to contact Unum, for the purposes of this analysis, the Court will assume that he does.

termination. She also did not mention that she planned to begin termination review of Plaintiff. (Pl. Resp. Br., at 13; Pl. Ex. 8.) Cruts and Gladden participated in an email thread on January 11, 2016 beginning termination review and seeking approval for Plaintiff's termination, but neither Cruts nor Gladden mentioned on the thread that the December 23 and 24, 2015 absences might have been covered by FMLA. (Pl. Ex. 9; Pl. Resp. Br., at 16).

Plaintiff was terminated on January 12, 2016, in a meeting with Gladden and another employee of Defendant, Joe Scranton ("Scranton"). Gladden did not issue Plaintiff a Final Written Warning prior to terminating his employment. (Pl. Resp. Br., at 14). In the termination meeting, Gladden and Scranton told Plaintiff that he was being discharged because of his attendance. At his request, they showed him a list of the days he was absent or tardy. Plaintiff contends that he told Gladden and Scranton that he believed that the December 23 and 24, 2015 absences were protected by FMLA. (Pl. Resp. Br., at 13-14). Later, Gladden wrote a memorandum to file about this meeting. She addressed Plaintiff's failure to produce a doctor's note, but not the fact that Plaintiff claimed that his absences were covered by FMLA. (Pl. Ex. 9.) After his termination by Defendant, Plaintiff began work at EAN Holdings LLC, operating as Enterprise Rent-a-Car, as an account coordinator, on March 23, 2016.

### D. Procedural History

Plaintiff filed this action on December 28, 2016, and filed an Amended Complaint on May 16, 2017. In his Amended Complaint, Plaintiff brought claims of FMLA interference and FMLA retaliation. On November 29, 2017, Defendant filed its Motion for Summary Judgment.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party

bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). In its summary judgment analysis, the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim," but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing FED. R. CIV. P. 56(e)). To meet this burden, the nonmovant must set forth facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

Neither party is required to submit evidence in any particular form, and a party who bears the burden of proof at trial need not produce evidence that would itself be admissible at trial in

order to survive a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). However, that party must be able to produce the material that supports these facts in an admissible form at trial. FED. R. CIV. P. 56(c)(2). For example, though a nonmovant is not required to depose its own witnesses, it must produce these witnesses at trial to testify on the claims on which the nonmovant will bear the burden of proof. *See id.*, *Celotex*, 477 U.S. at 324.

## III.     Summary Judgment Analysis

The FMLA "entitles eligible employees of covered employers to take up to twelve weeks of unpaid, job-protected leave each year due to, among other things, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *See Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140, 1147 (10th Cir. 2004) (*quoting* 29 U.S.C. § 2612(a)(1)(D)). The FMLA makes it unlawful for an employer to interfere with, restrain, or deny an employee's exercise or attempt to exercise his or her FMLA rights. *See Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005); 20 U.S.C. § 2615(a)(1). The FMLA also makes it unlawful for any employer to retaliate against an employee for exercising or attempting to exercise his or her FMLA rights. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-71 (10th Cir. 2006); 29 U.S.C. § 2615(a)(2). Plaintiff has alleged both interference and retaliation by Defendant. The parties do not dispute that Defendant is a covered employer, and that at all times relevant to this case, Plaintiff was an FMLA-eligible employee.

### A.     Interference Claim

#### 1.     Standard of Proof

Plaintiff alleges that Defendant interfered with his ability to take FMLA leave on December 23 and 24, 2015. To establish a claim of FMLA interference, a Plaintiff must show (1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his right to

take FMLA leave, such that he was prevented from taking the full twelve weeks of leave guaranteed by the FMLA, that he was denied reinstatement following leave, or that he was denied permission to take leave; and (3) that the employer's action was related to the exercise or attempted exercise of the plaintiff's FMLA rights. *See Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014) (*citing Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). In such claims, an employer's subjective intent is irrelevant. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 960 (10th Cir. 2002) (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)). If a plaintiff shows that his employer did interfere with his right to take FMLA leave, the burden shifts to the employer to show that it would have taken the adverse action regardless of the employee's FMLA leave. *See id.*, at 963. Here, Defendant contends Plaintiff cannot establish the first of these elements, that Plaintiff was entitled to FMLA leave. (Def. Reply Br. ("Reply Brief."), Doc. 40, at 2.)

### 2. Was Plaintiff Entitled to Take FMLA Leave?

An employee is entitled to FMLA leave, among other reasons, if the leave is (1) the result of a "serious health condition" that (2) "makes the employee unable to perform the functions" of his or her job. *See Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x 650, 654 (10th Cir. 2014) (unpublished) (quoting *Stoops v. One Call Commc'ns, Inc*., 141 F.3d 309, 313 (7th Cir. 1998) (internal citations omitted)); 29 C.F.R. § 825.112(a)(4). An employee must meet both of these elements to be entitled to FMLA leave. *See id.* For the purposes of the Motion for Summary Judgment, the parties do not dispute that Plaintiff had a "serious health condition." Accordingly, this Court must only evaluate whether that serious health condition made Plaintiff "unable to perform the functions" of his job.

An employee is unable to perform the functions of his position when a "health care provider finds that the employee is unable to work at all, or is unable to perform any one of the essential functions of the employee's position." 29 C.F.R. § 825.123(a). The employee bears the burden of proving that he is unable to perform any one of the essential functions of his or her position. *See Dalpiaz*, 760 F.3d at 1132; *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 254 (3rd Cir. 2014) ("The [FMLA] regulations place the onus on an employee's health care provider—not her employer—to certify whether the employee is unable to perform any essential function of her job."). A health care provider must be the one to determine and certify whether an employee is unable to perform any one of the essential functions of his position. *See id.*; 29 C.F.R. 825.123(a).

Here, it is undisputed that Plaintiff did not physically go to his doctor's office and did not speak to his doctor in connection with his absences on December 23 and 24, 2015. It is also undisputed that Plaintiff never provided a doctor's note in connection with those absences. However, Plaintiff contends a material dispute exists as to whether he was unable to perform any one of the essential functions of his position for two reasons. First, Plaintiff contends that the presence of a serious health condition—undisputed for the purposes of this motion—in itself demonstrates a genuine dispute as to whether an employee is able to perform the functions of his position. Second, Plaintiff cites his own testimony describing his condition and his conversation with a member of his doctor's staff.[3]

### a. Presence of a Serious Health Condition

Plaintiff argues that the fact that he has a serious health condition—undisputed for the purposes of this motion—creates a genuine dispute as to whether he was unable to perform any

---

[3] In his Response Brief, Plaintiff refers to this person as a "physician's assistant" (Pl. Resp. Br., at 7, 8, 12 and 19). Defendant refers to this person as a "nurse practitioner." (Def. Br., at 10, 20 and 21).

one of the essential functions of his position.  In support of this argument, Plaintiff cites *Crowell v. Denver Health & Hospital Authority*, the only Tenth Circuit case to construe 29 C.F.R. § 825.123(a).  *See* No. 12-CV-00019, 2013 U.S. Dist. LEXIS 28322 (D. Colo. Mar. 1, 2013).

However, Plaintiff's reliance on *Crowell* is misplaced.  The court in *Crowell* held that, as a factual matter, the same disputed facts that created a triable issue of fact as to whether the plaintiff had a serious health condition also created a triable issue of fact regarding whether the plaintiff was able to perform any one of the essential functions of her job.  The court based this holding on testimony and documentation from plaintiff's doctors.  However, the court did not hold that the presence of a serious health condition automatically creates a jury issue regarding whether a plaintiff can perform his job.  Unlike in *Crowell*, Plaintiff in this case has presented no testimony from a doctor and no documentation as to a serious health condition.  Accordingly, the undisputed presence of a serious health condition is not sufficient here to create a genuine dispute of material fact as to whether Plaintiff was unable to perform any one of the essential functions of his position.

### b.    Plaintiff's Testimony

Plaintiff contends that he "can testify as to the physical and mental condition he was in," and that this testimony creates a genuine dispute as to whether he was unable to perform any one of the essential functions of his position.  (Pl. Resp. Br., at 19.)  Plaintiff testified that a member of his doctor's staff gave him oral instructions to return to non-weight bearing activity and to continue taking Demerol.  However, Plaintiff has not offered any documentary or medical testimony evidence in support of these facts.  (Pl. Ex. 4, at 120:5-11.)  This evidence is insufficient to demonstrate a genuine dispute, as a plaintiff's testimony alone is never enough to support a genuine dispute of material fact, and Plaintiff has offered no admissible evidence to support his claim that he was unable to perform any one of the essential functions of his position.

The plain text of the implementing regulations indicate that a health care provider must be the one to determine and certify whether an employee is unable to perform any one of the essential functions of his position. *See* 29 C.F.R. 825.123(a); *Dalpiaz*, 760 F.3d at 1132; *Budhun*, 765 F.3d at 254. Moreover, in cases where the Court has considered a plaintiff's testimony in finding a genuine dispute of material fact, the testimony did not stand on its own, but rather, supplemented existing medical and documentary evidence. *See Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 570 (6th Cir. 2010) (finding a genuine dispute of material fact where plaintiff's testimony, her medical records, and the testimony of a Nurse Practitioner conflicted with another doctor's evaluation); *Barker v. R.T.G. Furniture Corp.*, 375 F. App'x 966, 968 (11th Cir. 2010) (unpublished) (finding no genuine dispute of material fact where the plaintiff offered no medical testimony demonstrating incapacity and offered only his own testimony of his symptoms, but no testimony that he was unable to complete his work). By contrast, in this case Plaintiff has offered no evidence other than his own testimony to show that he was unable to perform any one of the essential functions of his position. (Pl. Resp. Br., at 19.) Without additional documentary or testimonial evidence, Plaintiff cannot show any specific facts to support a genuine issue as to any material fact.

Further, any testimony Plaintiff might offer regarding the contents of his call with his doctor's office are out-of-court statements offered to prove the truth of the matter asserted, and as such, are inadmissible hearsay. *See* FED. R. EVID. 801(c), 802; *McClure v. Comair, Inc.*, No. 04-107, 2005 U.S. Dist. LEXIS 46170, *16-*17 (E.D. Ky. July 20, 2005) (a plaintiff's testimony about the treatment she received was not sufficient to demonstrate that a health care provider found her unable to perform any one of the essential functions of the employee's position); *Austin v. Haaker*, No. 98-2283, 76 F. Supp. 2d 1213, 1221 (D. Kan. 1999) (same); *Matewksi v. Orkin*

*Exterminating Co.*, No. 02-233, 2003 U.S. Dist. LEXIS 11127, *26-*27 n.26 (D. Me. July 1, 2003) (*adopted*, No. 02-233, 2013 U.S. Dist. LEXIS 15217 (D. Me. Sept. 3, 2003)) (Report and Recommendation holding that an unauthenticated note from Plaintiff's doctor was admissible generally, but was not to be used to establish the truth of the matter asserted in the note).

While inadmissible hearsay is permissible in response to a motion for summary judgment, the party offering that evidence must be able to offer material that supports these facts in an admissible form at trial. *See* FED. R. CIV. P. 56(c)(2); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In this case, however, Plaintiff has represented only that he would present this same inadmissible material at trial. (Pl. Resp. Br., at 19.) Plaintiff cannot use that evidence at trial to establish that he was entitled to FMLA leave. Because Plaintiff could not present these facts in admissible form at trial, he may not appropriately rely on them at summary judgment.

### 3. Equitable Estoppel

Plaintiff also contends that Defendant is estopped from arguing that Plaintiff was not eligible for FMLA leave because Defendant initially represented to Plaintiff that he was eligible for FMLA leave.[4] Plaintiff contends that he was misinformed by Lay that he did not need to contact Unum if he was only absent for two days.[5] For the purpose of this analysis, the Court

---

[4] Plaintiff describes this argument as waiver argument, as an employer may waive its right to the notice that employees are required to provide before taking FMLA leave. *See* 29 C.F.R. § 825.304(e). However, this argument is misplaced, as the Tenth Circuit does not require notice to prove an interference claim. *See Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 877 n.2 (10th Cir. 2004); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d at 960-61. Based on the substance of Plaintiff's argument, as well as the substance of Defendant's construction of this argument, the Court construes this argument as an equitable estoppel argument.

[5] The Tenth Circuit has not determined whether equitable estoppel may apply in an FMLA action. *Banks v. Armed Forces Bank*, 126 F. App'x 905, 906-907 (10th Cir. 2005) (unpublished). However, several other circuit courts have recognized that employers may be equitably estopped from denying FMLA benefits under certain circumstances. *See Fryman v. West Telemarketing, L.P.*, No. 06-CV-327, 2007 U.S. Dist. LEXIS 42591 (N.D. Okla. June 4, 2007) (citing *Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352 (5th Cir. 2006);

assumes without deciding that equitable estoppel may apply; however, Plaintiff has failed to satisfy the required elements.

To prove a claim of FMLA equitable estoppel under federal law, a party must establish: (1) that the employer knew all the facts, (2) that the employer intended that the employee would act on the employer's representations or conduct, (3) that the employee was ignorant of the true facts, and, (4) that the employee relied on the employer's conduct, to the employee's detriment. *See Sutherland v. Goodyear Tire & Rubber Co.*, 446 F. Supp. 2d 1203, 1211 (D. Kan. Feb. 14, 2006) (citing *Rios v. Ziglar*, 398 F.3d 1201, 1208 (10th Cir. 2005)) (internal citations omitted); *Banks v. Armed Forces Bank*, 313 F. Supp. 2d 1095, 1108 (D. Kan. 2004); *aff'd* 126 F. App'x 905 (10th Cir. 2005). Equitable estoppel is also a heavily fact-based inquiry. *See Davis v. Staffmark Inv., LLC*, No. 05-CV-706, 2006 U.S. Dist. LEXIS 29618 (N.D. Okla., May 12, 2006).

Although it is not clear from their Reply Brief, Defendant appears to argue that Plaintiff cannot satisfy the third element, reasonable reliance. In claiming equitable estoppel, an employee cannot rely on unreasonable ignorance of facts he should know; the employee's reliance must be objectively reasonable. *See Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (holding that reliance must have been reasonable); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 494 (8th Cir. 2002) (upholding a finding of equitable estoppel where the plaintiff's reliance was "not unreasonable").

Here, the undisputed facts show that Plaintiff was on notice that he must contact Unum to request FMLA leave. Plaintiff's two-day absence occurred two days after Plaintiff returned from

---

*Sorrell v. Rinker Materials Corp.*, 395 F.3d 332 (6th Cir. 2005); *Kosakow v. New Rochelle Radiology Associates*, 274 F.3d 706 (2nd Cir. 2001) (applying estoppel when plaintiff could have elected to postpone surgery until after FMLA requirements met); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579 (7th Cir. 2000)).

FMLA leave.  It is unreasonable to think that just eight weeks after the start of his initial FMLA leave, Plaintiff would be entirely ignorant as to the process for requesting FMLA leave.  Further, at least once before January 6, 2016, Gladden asked Plaintiff to provide her a doctor's note, clearly indicating to Plaintiff that she considered his December 23 and 24, 2015 absences as occurrences, and that they would not qualify for FMLA leave without more documentation.  (Def. Br., at 18). It is unreasonable to believe that Plaintiff would rely only on Lay's statements over the phone, to the exclusion of an explicit statement by his own manager upon his return to work.  Furthermore, there is no indication that Defendant intended to mislead Plaintiff.

By contrast, cases where Courts have applied equitable estoppel generally involve far more explicit representations, prolonged courses of conduct, or "close calls" in which an employee could have been eligible for FMLA leave if he or she had altered his or her behavior slightly.  *See Davis*, 2006 U.S. Dist. LEXIS 29618, at *10.  For example, the Eighth Circuit applied equitable estoppel to bar an employer from asserting that leave in excess of twelve weeks was not protected under the FMLA when they notified the plaintiff in writing that his entire thirty-four week sick leave qualified under the FMLA.  *See Duty*, 293 F.3d at 493; *c.f. Banks*, 126 F. App'x at 906-907 (10th Cir. 2005) (unpublished) (declining to apply equitable estoppel where the plaintiff was initially informed that she could use FMLA leave, and then, after making plans based on this representation, informed that she could not).  Here, the reading of Lay's alleged comments most favorable to Plaintiff, in combination with Gladden's request for a doctor's note, still falls far short of the affirmative misrepresentations that other courts have found to warrant equitable estoppel.

Plaintiff relies on *Murphy v. FedEx Nat'l. LTL, Inc*., another Eighth Circuit case, in support of his equitable estoppel argument.  *See* 618 F.3d 893, 899-200 (8th Cir. 2010).  In *Murphy*, an employer called an employee who was already on FMLA leave to inform her that her leave had

expired, and ask her how much more leave she anticipated taking. The employer represented to the employee that they had granted her 30 additional days of leave, but then called her again, four days later, to terminate her employment. This employer was estopped from arguing that an employer was not in fact entitled to FMLA leave.

*Murphy* is materially distinguishable from the record here. For example, unlike in *Murphy*, Plaintiff returned to work from his FMLA leave after his doctor cleared him to return to work. This makes it significantly less likely that, like the plaintiff in *Murphy*, he could reasonably understand his subsequent absences to be part of the same FMLA absence. Additionally, the parties do not dispute that after returning to work, Plaintiff had at least one conversation with Gladden, in which she advised him to produce a doctor's note regarding to his absences on December 23 and 24, 2015. These intervening events make it substantially less likely either that Plaintiff relied on Lay's statement, or that, if he did so, his reliance was reasonable. Accordingly, *Murphy* does not change the Court's conclusion that equitable estoppel is unwarranted here.

### B. Retaliation Claim

Plaintiff alleges that Defendant retaliated against him for his use of FMLA leave. Though Plaintiff's pleadings are not clear on this matter, the Court presumes based on his Response Brief that Plaintiff bases his retaliation claim exclusively on his termination. Additionally, for the purposes of Plaintiff's retaliation claim, this Court construes Plaintiff to argue that Defendant retaliated against both Plaintiff's use of FMLA leave from October 27 through December 17, 2015, and Plaintiff's alleged attempted use of FMLA leave on December 23 and 24, 2015.

#### 1. Standard of Proof

The FMLA prohibits an employer from retaliating against an employee for exercising his rights under the FMLA. 29 U.S.C. § 2615(a)(2). Retaliation claims under the FMLA are subject

to the burden-shifting analysis of *McDonnell Douglas*.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Doebele v. Sprint/United Mgmt. Co*., 342 F.3d 1117, 1135 (10th Cir. 2003).  To establish a prima facie case of FMLA retaliation, an employee must show that (1) he engaged in protected activity, (2) his employer took an action that a reasonable employee would have found materially adverse, and (3) a causal connection between the protected activity and the adverse action.  If the plaintiff establishes the prima facie elements, then the defendant must offer a legitimate, non-retaliatory reason for the employment action.  The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.  *See Metzler*, 464 F.3d at 1170-72.  Here, it is undisputed that Plaintiff engaged in protected activity when he took FMLA leave, and that his termination constituted an adverse action.  (Def. Br., at 29-31; Pl. Resp. Br., at 24.)  Accordingly, this Court must only determine whether Plaintiff has shown a causal connection between the protected activity and the adverse action before engaging in *McDonnell Douglas* burden-shifting analysis.

## 2. Causal Connection

To establish a prima facie causal connection, Plaintiff must demonstrate an employer's "bad intent" or "retaliatory motive."  *See Campbell v. Gambro Healthcare*, 478 F.3d 1282, 1287 (10th Cir. 2007).  To demonstrate a retaliatory motive, Plaintiff "must show that the individual who took the adverse action against him knew of the protected activity."  *Wood v. Handy & Harmon Co.*, No. 05-CV-532, 2006 U.S. Dist. LEXIS 81186 (N.D. Okla. Nov. 6, 2006) (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (Title VII retaliation case).  Plaintiff must also demonstrate "but-for" causation.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (Title VII retaliation).  The evidence of but-for causation, like all evidence presented

by the nonmovant, "must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

If a plaintiff shows that the individual who took adverse action against him knew of his protected activity, a very close temporal proximity can establish a prima facie showing of but-for causation. *See Metzler*, 464 F.3d at 1171; *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (explaining that *Nasser*'s but-for causation standard is consistent with existing Tenth Circuit precedent regarding temporal proximity); *Dulany v. Brennan*, No. 16-CV-149, 2017 U.S. Dist. LEXIS 36132, *22 (N.D. Okla. Mar. 14, 2017). For example, in *Metzler*, the court held a termination that occurred four to six weeks after protected activity to be "very closely connected in time." *Metzler*, 464 F.3d at 1172. By contrast, a three-month period between the protected conduct and the adverse action was too long to infer causation in *Anderson v. Coors Brewing Co*., an EEOC case. *See* 181 F.3d 1171, 1179 (10th Cir. 1999).

It is undisputed that Defendant knew of Plaintiff's October 27 through December 17, 2015 FMLA leave, and his subsequent attempted use of FMLA on December 23 and 24, 2015. Further, only twenty days elapsed between the protected activity and the adverse action, establishing a very close temporal connection. Accordingly, Plaintiff has presented sufficient facts to demonstrate causation.

### 3.      Legitimate, Non-Retaliatory Reason

Because Plaintiff has made out a prima facie case of FMLA retaliation, the Court must determine whether Defendant has offered a legitimate, non-retaliatory reason for terminating Plaintiff. The Court finds that it has. Defendant has offered substantial evidence of Plaintiff's attendance issues, including repeated warnings and counseling, which eventually led to his termination. Plaintiff's attendance issues are a legitimate, non-discriminatory reason for

terminating Plaintiff's employment. *See Schrieber v. Fed. Express Corp.*, No. 09-CV-128, 698 F. Supp. 2d 1266 (N.D. Okla. Mar. 8, 2010) (three disciplinary actions in twelve months, which warranted termination under the employer's policies, was a legitimate, non-retaliatory reason for termination); *Wilbanks v. Nordman Group, Inc.*, No. 09-CV-0572, 2010 U.S. Dist. LEXIS 113402 (N.D. Okla. Oct. 25, 2010) (a final warning for absences, among other issues, was a legitimate, non-retaliatory reason for termination); *Edwards v. Southcress, LLC*, No. 11-CV-0017, 2012 U.S. Dist. LEXIS 31873, at *19 (W.D. Okla. Mar. 9, 2012) (repeated violations of the employer's clock in/clock out policy was a legitimate, non-retaliatory reason for termination); *accord Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299 (10th Cir. 2017).

Moreover, there is no evidence that anyone involved in Plaintiff's termination even considered FMLA leave when deciding to terminate Plaintiff. (Pl. Ex. 8, 9.) In internal discussions of whether to terminate Plaintiff, Cruts only mentioned his "ongoing attendance issues" and new occurrences that have "progressed him to the point of a separation review." (Pl. Ex. 8.) Similarly, in Gladden's memorandum to file discussing Plaintiff's termination meeting, she only discussed his attendance issues. She also noted that she had asked Plaintiff for a doctor's note regarding his December 23 and 24, 2015 absences at least once, a fact which demonstrates that she did not believe that Plaintiff's December 23 or 24, 2015 absences were covered by FMLA, at least without more documentation.[6] (Pl. Ex. 9.) Accordingly, Defendant has offered a legitimate, non-retaliatory reason for terminating Plaintiff.

---

[6] Defendant also contends that when Gladden told Plaintiff to provide her with a doctor's note, she told him that, in the alternative, he should call Unum. Though it is unclear if Plaintiff disputes that Gladden told him to call Unum, this fact, if undisputed, further supports Defendant's claim that it terminated Plaintiff for legitimate, non-discriminatory reasons, as it demonstrates that Gladden indicated to Plaintiff that those absences would not count as occurrences at all if Unum approved him for FMLA/STD benefits.

### 4. Pretext

Because Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate that there is a genuine issue of material fact as to whether Defendant's proffered non-discriminatory reason was "unworthy of credence." *See Burris v. Novartis Animal Health U.S., Inc.*, 309 F. App'x 241, 244 (10th Cir. 2009) (unpublished) (quoting *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir. 2005)). Mere conjecture that the employer's explanation is pretext is insufficient for denial of summary judgment. *See id.*

While the close temporal proximity of Plaintiff's FMLA leave and his termination is sufficient to establish a prima facie causal connection, Plaintiff must present additional circumstantial evidence to establish that Defendant's reason for terminating him—attendance issues—is pretextual. Plaintiff argues that Defendant: (1) did not take any actions to determine if Plaintiff's absences qualified for FMLA leave; (2) did not take any action to warn Plaintiff that he was close to termination; (3) is estopped from asserting attendance as a legitimate reason for termination based on Plaintiff's conversation with Lay on December 23, 2015; and (4) did not issue Plaintiff a Final Written Warning, in accordance with the Attendance Policy.

This Court has already held that Plaintiff has not successfully made out an equitable estoppel argument. Additionally, this Court does not find persuasive Plaintiff's argument that Defendant's failure to take sufficient actions to warn Plaintiff that he was close to termination demonstrates pretext. While an employer cannot retaliate against an employee for exercising his or her rights under the FMLA, "an employee who requests leave or is on leave has no greater rights than an employee who remains at work." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998). Like all employees, Plaintiff was responsible for producing a doctor's note

concerning his absences. Moreover, Gladden instructed Plaintiff at least once to do so, clearly indicating that Gladden understood these absences to be occurrences under the Attendance Policy. Plaintiff took no action in response to this request, and cannot now claim Defendant's failure to do more demonstrates pretext. Similarly, Defendant issued Plaintiff many written and oral warnings related to his attendance, all of which noted that continued performance issues could result in termination. (Def. Ex. 5, 7, 11, 12, 13, and 15.) These undisputed facts vitiate any claim that Defendant's failure to take sufficient actions to warn Plaintiff demonstrates pretext.

Plaintiff also points out that Defendant never issued him a Final Written Warning, which is a departure from the Attendance Policy. Demonstrating that "the defendant acted contrary to written company policy prescribing the action to be taken by the defendant under the circumstances" may, in an appropriate case, give rise to a fact issue regarding pretext. *See Metzler*, 464 F.3d at 1176 (citing *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). For example, an employer departing from employment criteria set out in a job announcement so as to disadvantage a minority employee seeking a promotion was indicative of discrimination. *See Mohammed v. Callaway*, 698 F.2d 395, 400-01 (10th Cir. 1983). However, the mere fact that an employer failed to follow its own internal procedures does not necessarily demonstrate pretext. Rather, the Court infers pretext from the falsity of the employer's explanation, including deviation from written company policy. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 976-77 n.25 (10th Cir. 2017); *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000).

The Court finds that a genuine dispute exists as to whether Defendant acted contrary to written company policy. While the Attendance Policy states that employees will be issued a Final Written Warning after eight occurrences, Defendant's policies and communications with Plaintiff

also state that all employment is at-will and that Defendant reserves the right to take any employment action as appropriate. (Def. Ex. 1, 8.) Moreover, Gladden testified that the Attendance Policy does not require a Final Written Warning. (Pl. Ex. 10, at 47:9-50:2.) These conflicting facts raise a question of fact.

Nonetheless, this potential departure from written company policy is not sufficient to demonstrate pretext, even in combination with the close temporal proximity. For example, in *Randle v. City of Aurora*, the City did not announce an open position, even though the City's practice, as reflected in the Personnel Manual, was to do so. *See* 69 F.3d 441, 454 (10th Cir. 1995). This prevented the plaintiff from applying for and potentially receiving this promotion. However, the court held that this deviation from the City's internal procedures was a mistake which did not reflect pretext, as the City claimed that it promoted the other employee because she was the most qualified for the position, and the plaintiff had offered no evidence suggesting that this reason was pretext. *Id.*

As in *Randle*, Defendant here may have deviated its Attendance Policy in failing to provide a Final Written Warning. However, it is undisputed that, counting his absences on December 23 and 24, 2015, Plaintiff had exceeded the nine occurrences that trigger termination under the Attendance Policy. (Def. Ex. 8, 23.) In addition, Plaintiff received several warnings regarding his attendance, including one in his annual evaluation, which Gladden reviewed with him on January 6, 2016. All warnings issued pursuant to the Attendance Policy, as well as a coaching letter Plaintiff received, noted that continued attendance issues could result in termination. (Def. Ex. 5, 7, 11, 12, 13, and 15.) Accordingly, like in *Randle*, the relatively minor, procedural departure from Defendant's written policy in not issuing a Final Written Warning, while an error, cannot give rise to a fact issue regarding pretext without substantially more supporting evidence.

## IV. Conclusion

For the reasons set forth above, the Court finds that Plaintiff has failed to establish a genuine dispute of material fact as to either his FMLA interference claim or his FMLA retaliation claim. For these reasons, Defendant's Motion for Summary Judgment is GRANTED. An order of judgment will be entered separately.

**SO ORDERED THIS 7th day of February, 2018.**

**TERENCE C. KERN**
**United States District Judge**